**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL FINANCIAL PARTNERS CORP., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 14-cv-7424 |
| v. | ) ) | Judge Kennelly |
| PAYCOM SOFTWARE, INC., | ) ) | Magistrate Judge Schenkier |
| Defendant. | ) ) ) | |

**PLAINTIFF NATIONAL FINANCIAL PARTNERS CORP.'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Richard D. Harris (ARDC No. 1137913)
Jeffrey P. Dunning (ARDC No. 6273364)
Matthew J. Levinstein (ARDC No. 6300343)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
(312) 456-8400

COUNSEL FOR PLAINTIFF NATIONAL
FINANCIAL PARTNERS CORP.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION……………………………………………….................   1

II.    STATEMENT OF FACTS……………………………………………   2

    A.    NFP and the NFP Logo Mark…………………………………...   2

    B.    Paycom and the Infringing Paycom Logo………………………   4

III.   NFP IS ENTITLED TO A PRELIMINARY INJUNCTION…………………   5

    A.    Legal Standards for Preliminary Injunctive Relief…………………   5

    B.    NFP is Likely to Succeed on Its Federal Trademark
          Infringement and False Designation of Origin Claims………………...   7

        1.   The NFP Logo Mark is a Valid and Protectable Mark………………..   8

        2.   Paycom's Use of the Infringing Paycom Logo is
            Likely to Cause Confusion with the NFP Logo Mark………………...   10

            a.    The Parties' Marks are Confusingly Similar…………………..   10

            b.    NFP and Paycom Provide Closely-Related Services …………..   11

            c.    Consumers are Actually Confused as to the Origin or
                 Sponsorship of Paycom's Financial Services…………………...   13

            d.    Degree of Consumer Care………………………………………   13

            e.    Strength of the Marks factor favors NFP………………………   14

            f.    Manner of Concurrent Use………………………………….   15

            g.    Paycom's Intent…………………………………………….   15

    C.    NFP is Likely to Succeed on Its Illinois State Law Claims……………   16

    D.    There is No Adequate Remedy at Law and NFP is Likely to
          Suffer Irreparable Harm in the Absence of Preliminary
          Injunctive Relief………………………………………………………..   16

    E.    The Balancing of Harms Tips in NFP's Favor…………………………   17

i

**F.** **Issuance of a Preliminary Injunction is in the Public Interest**………..    19

**G.** **The Court Should Require NFP to Post a Minimal Bond, if Any**……………………………………………………………………...    19

**IV.** **CONCLUSION**……………………………………………………………...    20

## TABLE OF AUTHORITIES

**Federal Cases**                                                                                         **Page**

*Am. Broad. Co. v. Maljack Prods., Inc.*,
    34 F. Supp. 2d 665 (N.D. Ill. 1998)……………………………………………    16

*Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*,
    11 C 02242, 2013 WL 6839815 (N.D. Ill. Dec. 27, 2013)………………    9

*AM Gen. Corp. v. DaimlerChrysler Corp.*,
    311 F.3d 796 (7th Cir. 2002)……………………………………………..    13

*AutoZone, Inc. v. Strick*,
    543 F.3d 923 (7th Cir. 2008)………………………………………………..    *passim*

*Barbecue Marx, Inc. v. 551 Ogden, Inc.*,
    235 F.3d 1041 (7th Cir. 2000)………………………………………………    8

*CAE, Inc. v. Clean Air Engineering, Inc.*,
    267 F.3d 660 (7th Cir. 2001)………………………………………………    11, 12

*Champion Roofing, Inc. v. Champion Window Mfg.*,
    No. 13 C 5478, 2013 WL 6669476 (N.D. Ill. Dec. 16, 2013)……………    6, 16

*Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*,
    78 F.3d 1111 (6th Cir. 1996)……………………………………………..    13

*Computer Care v. Serv. Sys. Enters., Inc.*,
    982 F.2d 1063 (7th Cir. 1992)………………………………………………    14

*Eli Lilly & Co. v. Natural Answers, Inc.*,
    233 F.3d 456 (7th Cir. 2000)……………………………………………..    7, 14, 19

*Hyatt Corp. v. Hyatt Legal Services*,
    736 F.2d 1153 (7th Cir. 1984)……………………………………………    17

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*,
    846 F.2d 1079 (7th Cir. 1988)……………………………………………    *passim*

*Lettuce Entertain You Enter., Inc. v. Leila Sophia AR, LLC*,
    703 F. Supp. 2d 777 (N.D. Ill. 2010)……………………………………..    13, 15

*Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*,
    128 F.3d 1111 (7th Cir. 1997)……………………………………………    10, 11

*Morningware, Inc. v. Hearthware Home Prods., Inc.*,
        673 F. Supp. 2d 630 (N.D. Ill. 2009)…………………………………..        16

*Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*,
        80 F. Supp. 2d 815 (N.D. Ill. 1999)……………………………………        9

*Processed Plastic Co. v. Warner Communications, Inc.*,
        675 F.2d. 852 (7th Cir. 1982)……………………………………………        6, 16, 17

*Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*,
        03 C 6070, 2004 WL 2967446 (N.D. Ill. Nov. 15, 2004)………………..        9

*Scherr v. Volpe*,
        466 F.2d 1027 (7th Cir. 1972)…………………………………………        19

*Spex, Inc. v. Joy of Spex, Inc.*,
        847 F. Supp. 567 (N.D.Ill. 1994)………………………………………        8, 16

*Stahly, Inc. v. M.H. Jacobs Co.*,
        183 F.2d 914 (7th Cir. 1950) …………………………………………        19

*Storck USA, L.P. v. Farley Candy Co.*,
        14 F.3d 311 (7th Cir. 1994)……………………………………………        6, 18

*Stuller, Inc. v. Steak N Shake Enterprises, Inc.*,
        695 F.3d 676 (7th Cir. 2012)…………………………………………..        6

*TMT North America, Inc. v. Magic Touch GmbH*,
        124 F.3d 876 (7th Cir. 1997)…………………………………………..        8

*Turbo Tek Enterprises, Inc. v. F.P. Feature Products, Inc.*,
        No. 87 C 7438, 1987 WL 19558 (N.D. Ill. Oct. 7, 1987)………………...        20

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
        505 U.S. 763 (1992)……………………………………………………..        9

*Ty, Inc. v. GMA Accessories, Inc.*,
        132 F.3d 1167 (7th Cir. 1997)…………………………………………        18

*Ty, Inc. v. The Jones Group, Inc.*,
        237 F.3d 891 (7th Cir. 2001)…………………………………………..        6

*Wm. Wrigley Jr. Co. v. Swerve IP, LLC*,
        900 F. Supp. 2d 794 (N.D. Ill. 2012)……………………………………..        6, 16

**Federal Statutes**

15 U.S.C. § 1114(1)…………………………………………………………… 7

15 U.S.C. §1115(a)…………………………………………………………. 8

15 U.S.C. § 1125(a)………………………………………………………… 7

15 U.S.C. § 1127…………………………………………………………… 9

**Federal Rules**

Federal Rule of Civil Procedure 65(c)……………………………………… 19

**Other Authority**

2 McCarthy on Trademarks and Unfair Competition §11:11 (4th ed.)………….. 8

## I.        INTRODUCTION

For nearly fifteen years, Plaintiff National Financial Partners Corp. ("NFP") has been an industry leader in the financial services sector, providing employee benefits and human resources services and other financial services to corporate clients and high net worth individuals and providing advisory services to independent financial advisors.  NFP adopted and began using the highly-distinctive design shown below as its corporate logo in 2010 (the "NFP Logo Mark"):



NFP has invested significant resources in marketing and promoting its services in association with the NFP Logo Mark, and has obtained multiple federal trademark registrations for the NFP Logo Mark.  In essence, the NFP Logo Mark serves as NFP's corporate identity, and is well-known among brokers for and purchasers of financial services.

NFP recently learned that Defendant Paycom Software, Inc. ("Paycom") has adopted and begun using the logo shown below in association with its own financial products and services (the "Infringing Paycom Logo"):



NFP has already received several inquiries from third parties who have encountered the Infringing Paycom Logo and have been confused as to whether Paycom had been acquired by NFP or is otherwise somehow affiliated with NFP.

Unless enjoined, Paycom's ongoing infringement of the NFP Logo Mark will create, as it has already created, continuing confusion among consumers, and will hinder NFP's ability to control its goodwill in the NFP Logo Mark and its reputation, thus causing irreparable harm to NFP. Accordingly, NFP seeks preliminary injunctive relief to protect its trademarks from further irreparable harm and infringement, and to protect the public from ongoing confusion, pending a trial on the merits.

## II.    STATEMENT OF FACTS

### A.  NFP and the NFP Logo Mark

NFP is a leading provider of employee benefits and human resources services (including employee benefit and retirement plan brokerage and consulting services, employee health insurance services, and human resources services) for companies of all sizes – generating annual revenues in excess of one billion dollars from services provided in the United States alone. Since 2010, NFP has continuously used the NFP Logo Mark as its corporate logo and identity in its nationwide marketing and promotion efforts for its various financial services. NFP has invested substantial time, effort, and expense in advertising and promoting its services in association with the NFP Logo Mark. As a result, the NFP Logo Mark is well-known among corporate purchasers of employee benefits and human resources services. NFP's brand recognition and its federal and common law trademarks are some of its most valuable assets.

NFP has sought and obtained a number of federal trademark registrations covering the NFP Logo Mark, both on its own and in combination with the well-known NFP brand name, as listed below (collectively the "NFP Logo Registrations"):[1]

| Trademark | U.S. Reg. No. |
|---|---|
|  | 4,094,886 |
|  | 4,094,887 |
|  | 4,094,885 |
|  | 4,097,433 |

The NFP Logo Mark has been in continuous use since 2010 (O'Malley Decl., ¶ 4).[2] Since adopting the NFP Logo Mark in 2010, NFP has expanded the scope of services which it provides to its corporate customers, which now include a variety of types of human resources services including payroll processing and administration services (O'Malley Decl., ¶ 6). As a result, NFP has acquired exclusive trademark rights in the NFP Logo Mark for those human resources and payroll services under common law.

---

[1] Copies of the trademark registration certificates for the NFP Logo Registrations are attached as Exhibit 1 to this Motion.

[2] The Declaration of Edward O'Malley in Support of NFP's Motion for Preliminary Injunction is attached as Exhibit 2 to this Motion.

As set forth in the NFP Logo Registrations and in the attached O'Malley Declaration (Ex. 2), the services provided by NFP in association with the NFP Logo mark include the following:

| NFP's Services |
| --- |
| **Employee Benefits** consulting and administrative services |
| **Employee Retirement Plan/Planning** consulting and advisory services |
| **Employee Health Insurance** consulting, administrative and advisory services |
| **Payroll Processing** and administration services |

**B. Paycom and the Infringing Paycom Logo**

Paycom is a provider of a financial products and services in the area of human resources and payroll processing. During the first half of 2014, Paycom adopted and began using the Infringing Paycom Logo throughout its marketing and promotion for its services. As set forth in Paycom's own federal trademark application for the Infringing Paycom Logo filed with the U.S. Patent and Trademark Office,[3] Paycom provides the following types of services in association with the Infringing Paycom Logo, among others:

---

[3] A copy of Paycom's U.S. Trademark Application No. 86/308,389 for the Infringing Paycom Logo is attached as Exhibit 3 to this Motion. That application (which is based on Paycom's use of that mark in interstate commerce) covers the following services:

> "Payroll processing services; Payroll administration and management services; Human resources management; performing employee benefits administration, namely, calculating, collecting and depositing payroll taxes for federal, state and local jurisdictions, preparation and submission of payroll tax returns and compliance reports, employee pension and retirement funds administration, employee health insurance administration, namely preparing and transmission of initial notices and election notices to applicable employees and respond to employee questions regarding health insurance administration and employee flexible spending accounts administration for others" in International Class 35.

| **Paycom's Services** |
|---|
| **Employee Benefits** administration services |
| **Employee Retirement Funds** administration services |
| **Employee Health Insurance** administration services |
| **Payroll Processing** and administration and management services |

Paycom's website prominently features the Infringing Paycom Logo (Ex. 4).[4]  Further, Paycom has incorporated the Infringing Paycom Logo into signage appearing on the front of Paycom's corporate headquarters and other corporate facilities, and widely uses the Infringing Paycom Logo in advertising and promotion for its financial products and services (Id.).  On June 12, 2014, Paycom filed its own federal trademark application for the Infringing Paycom Logo, in which it claimed to have begun using the Infringing Paycom Logo in interstate commerce on February 28, 2014.

Paycom's use of the Infringing Paycom Logo has already created actual confusion in the marketplace.  As discussed and shown in the attached Declaration of Kelly Hudelson (Ex. 5), third parties have already contacted an affiliate of NFP inquiring as to whether Paycom is affiliated or connected with NFP.  Thus, confusion is not merely likely here, it is actual and it is ongoing.

### III.    NFP IS ENTITLED TO A PRELIMINARY INJUNCTION

#### A.    Legal Standards for Preliminary Injunctive Relief

A party seeking a preliminary injunction must show (1) that its case has some likelihood of success on the merits and (2) that it has no adequate remedy at law and will suffer irreparable

---

[4] Exhibit 4 to this Motion comprises a collection of screen shots from Paycom's Internet website (http://www.paycom.com) which show Paycom's use of the Infringing Paycom Logo in association with the services listed above.

harm if a preliminary injunction is denied. *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 678 (7th Cir. 2012). If the moving party meets these threshold requirements, the district court should also consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id*. Finally, the Court must consider the potential effect on the public interest (i.e. non-parties) in denying or granting the injunction. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). The Court then weighs all of these factors, "sitting as would a chancellor in equity," in deciding whether to grant an injunction. *Id*. The district court's weighing of the facts is not mathematical in nature; rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-96.

In the trademark infringement context, "some likelihood of success on the merits" simply means a "better than negligible" chance of prevailing. *Id*. at 897. Further, a trademark infringement plaintiff seeking injunctive relief is presumed to have been irreparably harmed and to lack an adequate legal remedy. *Champion Roofing, Inc. v. Champion Window Mfg.*, No. 13 C 5478, 2013 WL 6669476, at *5 (N.D. Ill. Dec. 16, 2013); *Wm. Wrigley Jr. Co. v. Swerve IP, LLC*, 900 F. Supp. 2d 794, 803 (N.D. Ill. 2012); *see also Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d. 852, 858 (7th Cir. 1982) (trademark infringement causes irreparable harm). Lastly, the balancing of irreparable harms is done on a sliding scale; the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. *Ty, Inc.*, 237 F.3d at 895; *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994) (if the likelihood of success is high, the balance of harms is less significant).

Here, NFP has a strong likelihood of success on the merits of its trademark infringement and unfair competition claims, far surpassing the threshold level of "better than negligible" required for the Court to grant injunctive relief. As discussed below, Paycom provides closely related services in association with the Infringing Paycom Logo, which has resulted in actual confusion in the marketplace. Further, NFP faces substantial irreparable harm from Paycom's unauthorized and uncontrolled use of the Infringing Paycom Logo. This immediate, inevitable, and irreparable injury overshadows any inconvenience Paycom which may experience from the entry of a preliminary injunction. Finally, an injunction is needed to protect the public from deception and confusion. Accordingly, this Court should enter a preliminary injunction to prevent further irreparable harm to NFP through diminution of the strength of its trademark rights.

**B.      NFP is Likely to Succeed on Its Federal Trademark Infringement and False Designation of Origin Claims**

Section 32(1) of the Lanham Act makes it unlawful to use a "reproduction, counterfeit, copy, or colorable imitation" of a registered mark in such a way as "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Similarly, Section 43(a) of the Lanham Act prohibits the use of a mark that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a). To establish trademark infringement, NFP must show (1) ownership of a valid, protectable trademark, and (2) a likelihood of confusion caused by the defendant's use of its mark. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). This same test governs NFP's state law deceptive business practice, deceptive trade

practice, and unfair competition claims.[5]   Both elements are satisfied here.   At the preliminary

injunction stage, the threshold for establishing a likelihood of success on the merits is low, and

NFP need only "show a greater than negligible chance of prevailing on the merits of the

underlying infringement claim."   *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043

(7th Cir. 2000).

### 1.      The NFP Logo Mark is a Valid and Protectable Mark

The NFP Logo Mark is a valid and protectable mark.   The mark is valid as evidenced by

NFP's ownership of the NFP Logo Registrations (Ex. 1).   Under federal law, a federal trademark

registration "shall be prima facie evidence of the validity of the registered mark . . . and of the

registrant's exclusive right to use the registered mark in commerce on or in connection with the

goods and services specified in the registration."   15 U.S.C. §1115(a).   Thus, NFP's federal

trademark registrations for the NFP Logo Mark constitute *prima facie* evidence of NFP's rights

in that mark.   As stated in the NFP Logo Registrations, NFP has used the NFP Logo Mark

continuously in interstate commerce since 2010.

The NFP Logo Mark is inherently distinctive and therefore entitled to a wide scope of

protection.   Indeed, the NFP Logo Mark is an arbitrary mark that does not suggest or describe

any ingredient, quality, or characteristic of NFP's services.   *See* 2 McCarthy on Trademarks and

Unfair Competition §11:11 (4th ed.) ("Arbitrary marks comprise those words, symbols, pictures,

etc., that are in common linguistic use but which, when used with the goods or services in issue,

neither suggest nor describe any ingredient, quality or characteristic of those goods or

---

[5] *See TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 881 (7th Cir. 1997) (because federal and state laws regarding trademarks and related claims of unfair competition are substantially congruent, "we will treat this case as a federal Lanham Act case, analyzing the parties' contentions under the principles and case law of that statute."); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D.Ill. 1994) (claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act).

services."); *see also Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, 11 C 02242, 2013 WL 6839815, at *6 (N.D. Ill. Dec. 27, 2013) ("'American Eagle,' the most salient part of the mark, is an arbitrary mark because 'it neither describes nor suggests [AE Outfitters'] product or service'"). Rather, the NFP Logo Mark identifies NFP as the source of its financial products and services. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (noting that arbitrary marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection").

Additionally, NFP has acquired an even broader scope of rights in the NFP Logo Mark under common law through its use of the NFP Logo Mark in association with a variety of services beyond those expressly listed in the NFP Logo Registrations. Trademark protection is a function of use and distinctiveness. *Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 878 (N.D. Ill. 1999). The Lanham Act defines "use" as "bona fide use of a mark in the ordinary course of trade." 15 U.S.C. § 1127. In the absence of, or prior to, federal registration, common law ownership of a mark is "established as of the first actual use of a mark in a genuine commercial transaction." *Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, 03 C 6070, 2004 WL 2967446, at *5 (N.D. Ill. Nov. 15, 2004) (citations omitted). NFP began using the NFP Logo Mark in interstate commerce in association with human resources and payroll processing and administration services in January 2012 and has used the NFP Logo Mark for payroll-related services continuously since that date (O'Malley Decl., ¶ 6). As a result of such use, NFP has acquired exclusive and enforceable rights in the NFP Logo Mark under common law in association with human resources and payroll processing and administration services.

### 2. Paycom's Use of the Infringing Paycom Logo is Likely to Cause Confusion with the NFP Logo Mark

Paycom's use of the Infringing Paycom Logo in connection with financial products and services is likely to cause confusion among the relevant class of consumers; indeed, it is actually causing such confusion right now. Courts in the Seventh Circuit examine seven factors to evaluate where a likelihood of confusion exists: (1) the similarity of the marks; (2) the similarity of the goods or services; (3) the degree of care likely to be exercised by consumers; (4) the strength of the movant's mark; (5) the area and manner of concurrent use; (6) the defendant's intent; and (7) whether actual confusion exists. *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997). No single factor is dispositive, and the Court may assign varying weight to each of the factors depending on the facts at hand. *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988). At the same time, although no one factor is dispositive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 931 (7th Cir. 2008). Where evidence of actual confusion exists, courts accord it substantial weight. *Meridian*, 128 F.3d at 1118.

### a. The Parties' Marks are Confusingly Similar

Marks need not be identical in order to find trademark infringement. The test for confusing similarity is whether consumers are likely to mistakenly associate the services offered under the defendant's mark with the plaintiff. *Meridian*, 128 F.3d at 1115. As such, a comparison of the marks must be made "'in light of what happens in the marketplace,' not merely by looking at the two marks side-by-side." *Ty*, 237 F.3d at 898 (quoting *Meridian*, 128 F.3d at 1115). Nevertheless, as shown below, the NFP Logo Mark and the Infringing Paycom Logo are strikingly similar in overall visual appearance and commercial impression:

10

 

**NFP Logo Mark**      **Infringing Paycom Logo**

Both the NFP Logo Mark and the Infringing Paycom Logo are comprised of two interlocking "C" shapes, with one of the "C" shapes being dark green and the other "C" shape being a lighter shade of green. While the Infringing Paycom Logo adds an additional leg to one of the "C" shapes, that slight change does not substantially alter the overall commercial impression of the mark. Without question, any minor differences between the marks are outweighed by the common use of two interlocking "C" shapes, notably colored in dark and light green shades, which serves to create the same highly distinctive visual impression. *See Ty*, 237 F.3d at 898 ("It is 'inappropriate to focus on minor stylistic differences to determine if confusion is likely' if the public does not encounter the two marks together" (quoting *Meridian*, 128 F.3d at 1115)).

    **b.    NFP and Paycom Provide Closely-Related Services**

The more similar the parties' services, the more likely infringement will be found. *See AutoZone*, 543 F.3d at 931; *Meridian*, 128 F.3d at 1116. A likelihood of confusion may exist even if the parties are not in direct competition, or their products and services are not identical. *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 679 (7th Cir. 2001) (citations omitted). "Rather, because the rights of an owner of a registered trademark extend to any goods that might be, in the minds of consumers, 'related,' i.e., put out by a single producer, the more accurate inquiry is whether the public is likely to attribute the products and services to a single source.

11

*Id.* "'Closely related' products are those that 'would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner.'" *Id.* (quoting *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 958 (7th Cir. 1992)).[6] One reason to protect trademark owners against the use of similar marks on closely related products or services is to protect the owner's ability to enter markets in which it does not currently trade, but into which it might reasonably be expected to expand in the future. *CAE,* 267 F.3d at 681.

As noted above, the NFP Logo Registrations cover a wide variety of business-related services, including (1) employee benefits consulting and administrative services, (2) employee retirement plan consulting and advisory services, and (3) employee health insurance consulting, administrative and advisory services. In addition, NFP has acquired yet additional trademark rights under the common law with regard to payroll processing and administration services (O'Malley Decl., ¶ 6), for which NFP has used the NFP Logo Mark for years prior to Paycom's adoption of the Infringing Paycom Logo.

Similarly, Paycom provides a variety of services under the Infringing Paycom Logo which are closely related, if not identical, to NFP's services, including employee benefits administration, employee retirement funds administration, employee health insurance administration, payroll processing, and payroll administration and management, among others. The parties' respective services are exactly the type that would reasonably be thought by the

---

[6] *See also Int'l Kennel Club,* 846 F.2d at 1089 (agreeing that the plaintiff's service of promoting and sponsoring dog shows was sufficiently related to the defendant's toy-dog products to cause confusion); *AutoZone*, 543 F.3d at 931 (finding that where there was some direct overlap between plaintiff's products and defendant's services (defendant provided car washes and oil changes while plaintiff sold car-wash and oil-change products), a reasonable consumer, taking into account the similarity of the marks, could conclude from the relatedness of the goods and services that the marks were all attributable to a single source).

buying public to come from the same source. Like the parties' services in *Int'l Kennel Club* and *AutoZone*, both NFP's and Paycom's respective services are directed to similar classes of potential purchasers – namely, corporate human resources and benefits administration professionals. Further, the services are of the type that would typically travel in the same business-to-business trade channels.

Thus, there is no question that both NFP and Paycom offer closely-related services in the fields of benefits administration, human resources and payroll processing. Accordingly, there exists substantial overlap between the parties' respective services, and thus this factor weighs heavily in favor of a grant of injunctive relief.

### c. Consumers are Actually Confused as to the Origin or Sponsorship of Paycom's Financial Services

Where actual confusion exists, courts accord this factor substantial weight. *Lettuce Entertain You Enter., Inc. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777, 788 (N.D. Ill. 2010); *International Kennel Club of Chicago*, 846 F.2d at 1087 (even a few instances of actual confusion may be considered highly probative of a likelihood of confusion). Here, NFP has identified several instances of actual confusion among third parties who have been confused as to whether a relationship exists between NFP and Paycom, due to Paycom's use of the Infringing Paycom Logo (Hudelson Decl., ¶¶ 5-6). This Court should not hesitate to find a likelihood of confusion where, as here, documented incidents of actual confusion exist.

### d. Degree of Consumer Care

Financial services are not inexpensive, and, generally, consumers of financial services are likely to be relatively sophisticated. However, a "consumer's high sophistication does not foreclose confusion." *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 827-28 (7th Cir. 2002); *see also Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111,

1121 (6th Cir. 1996) ("The relevant question is whether a golfer, albeit sophisticated, would likely be confused about affiliation between the two clubs"). In the context of consumer care, the Seventh Circuit "can readily imagine a scenario in which confusion is quite likely," regardless of consumer sophistication. *Computer Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1070 (7th Cir. 1992). Here, no imagination whatsoever is necessary. Actual consumer confusion has resulted from Paycom's use of the Infringing Paycom Logo. Thus, this factor is neutral at most and is entitled to little weight here.

  e.  **Strength of the Marks**

  The stronger the mark, the more likely it is that encroachment on it will produce confusion. *AutoZone*, 543 F.3d at 933. The strength of a trademark generally "refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular . . . source." *Eli Lilly*, 233 F.3d at 464. "The crucial question is whether the mark is strong enough that the public will form an association between the mark and the source of that particular good." *Sullivan*, 385 F.3d at 777.

  As discussed above, the NFP Logo Mark is a strong mark because it is arbitrary and inherently distinctive. Further, NFP has invested substantial time, effort, and expense in advertising and promoting its services provided under the NFP Logo Mark throughout the United States. As noted above, the NFP Logo Mark serves as NFP's primary corporate logo, and is used throughout NFP's marketing and promotion for its services, including on its website and in its advertising and promotional materials (O'Malley Decl., ¶ 5). As a result, the NFP Logo Mark has become an extremely valuable asset. Each year, NFP generates revenues in excess of one billion dollars from services provided in the United States alone in association with the NFP Logo Mark (Id.). Because the NFP Logo Mark is arbitrary and NFP's extensive use of the NFP

Logo Mark has reinforced that financial services offered under the NFP Logo Mark originate from a single source – NFP – this factor favors NFP.

### f.     Manner of Concurrent Use

The "area and manner of concurrent use" inquiry assesses "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *AutoZone*, 543 F.3d at 932 (quotations omitted). In determining whether the area and manner of concurrent use as between two marks is likely to cause confusion, several factors can be important, including (1) the relative geographical distribution areas; (2) evidence of direct competition between the services; and (3) whether the services are sold through the same marketing channels. *Ty*, 237 F.3d at 900.

Both NFP and Paycom have offices in Chicago and numerous other major U.S. cities, and both companies offer related types of financial services to businesses throughout the United States. Specifically, both Paycom and NFP provide employee benefits administration, employee retirement funds administration, employee health insurance administration, payroll processing, and payroll administration and management services. Both companies also promote their services online. Thus, this factor supports a finding of likelihood of confusion.

### g.     Paycom's Intent

Intent to deceive is not required for a finding of likelihood of confusion. *See Lettuce Entertain You*, 703 F. Supp. 2d at 789 (finding likelihood of confusion and granting preliminary injunction in the absence of intent to deceive by the defendant). However, "an intent to confuse may be reasonably inferred from the similarity of the marks where the senior mark has attained great notoriety." *AutoZone*, 543 F.3d at 934. Thus, while NFP presently does not yet possess evidence that Paycom deliberately chose to mimic the NFP Logo Mark, the similarity between the respective marks (down to the common use of two shades of green), when considered in the

context of the parties' closely related services, seems beyond coincidence. Thus, in view of the widespread use and notoriety of the NFP Logo Mark, in the absence of discovery on this issue this factor is at worst neutral.

### C.      NFP is Likely to Succeed on Its Illinois State Law Claims

In Illinois, courts resolve state law unfair competition and deceptive trade practices claims "according to the principles set forth in the Lanham Act." *Spex*, 847 F. Supp. at 579.[7] Illinois courts look to federal case law and apply the same analysis to state law infringement claims. *Id.* at 579 (citation omitted). The determination as to whether there is a likelihood of confusion is similar under the Lanham Act, the Illinois Deceptive Trade Practices Act, and the Illinois Deceptive Business Practices Act. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998). Because NFP has established a likelihood of success on the merits of its trademark infringement and false designation of origin claims against Paycom, and because the legal standards are the same under Illinois state law, NFP has established a likelihood of success on the merits for its Illinois unfair competition, deceptive trade practices, and deceptive business practices claims.

### D.      There is No Adequate Remedy at Law and NFP is Likely to Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief

Irreparable harm is presumed in trademark infringement cases. *Champion Roofing,* 2013 WL 6669476 at *5; *Wm. Wrigley Jr. Co.*, 900 F. Supp. 2d at 803; *see also Processed Plastic Co.,* 675 F.2d at 858 trademark infringement causes irreparable harm).

---

[7] *See also Morningware, Inc. v. Hearthware Home Prods., Inc.*, 673 F. Supp. 2d 630, 639 (N.D. Ill. 2009) ("Where a plaintiff's factual allegations under the Illinois Uniform Deceptive Trade Practices Act also form the basis for plaintiff's claims under the Lanham Act, the legal inquiry is the same under both statutes. Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act.") (citations omitted).

Regardless of whether this Court applies a presumption of irreparable harm in trademark infringement cases, clearly NFP will be irreparably harmed if the Court does not grant a preliminary injunction. If an injunction does not issue, consumers will continue to be confused as to whether Paycom and NFP are the same company or are otherwise somehow affiliated. Indeed, this has already happened on at least several occasions of which NFP is aware. Moreover, NFP has no way of identifying those other consumers who have been confused by Paycom's use of the Infringing Paycom Logo.

The only way to prevent such irreparable harm is to enjoin Paycom from continuing to use the Infringing Paycom Logo. Indeed, the difficulty in proving damages resulting from trademark infringement is widely recognized. *Hyatt Corp. v. Hyatt Legal Services,* 736 F.2d 1153, 1158 (7th Cir. 1984). Irreparable harm also results from the difficulty of computing lost sales and, generally, the plaintiff's lack of control over what members of the consuming public are likely to perceive to be plaintiff's goods. *See Processed Plastic,* 675 F.2d at 858 ("[t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods"); *Int'l Kennel Club,* 846 F.2d at 1091 (damages caused by trademark infringement are "by their very nature irreparable and not susceptible of adequate measurement for remedy at law"). For these reasons, NFP has no adequate remedy at law, and will continue to suffer irreparable harm if the Court does not grant a preliminary injunction.

### E. The Balancing of Harms Tips in NFP's Favor

NFP has and will continue to invest substantial time and resources in the development of its brand and reputation. However, Paycom's use of the Infringing Paycom Logo is causing NFP to lose control of the valuable goodwill represented by the NFP Logo Mark. The substantial and irreparable harm that NFP will continue to suffer due to Paycom's infringement outweighs any

17

harm that Paycom may suffer if it is prevented from continuing its infringement arising out of its recent adoption of the Infringing Paycom Logo.

Courts within this Circuit apply a "sliding scale" approach to the balancing of irreparable harms. *Ty*, 237 F.3d at 895. The more likely the plaintiff is to succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. *Storck*, 14 F.3d at 314. Where, as here, the plaintiff has demonstrated a strong case on the merits as well as ongoing, irreparable harm, the balance tips heavily towards granting injunctive relief. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1172 (7th Cir. 1997).

The potential harm to Paycom caused by an injunction is the cost of removing the Infringing Paycom Logo from its website and advertising materials. These costs may not be insignificant. However, Paycom only recently adopted the Infringing Paycom Logo. The Seventh Circuit has acknowledged that "[o]ne entering a field already occupied by another has a duty to select a trademark that will avoid confusion." *Ty*, 237 F.3d at 903 (quoting *Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979)). Thus, when assessing the harm to the alleged infringer, "the court excludes the burden it voluntarily assumed by proceeding in the face of known risk." *Id*. In view of the overwhelming similarity between the parties' respective marks (down to the common use of two shades of green), and in view of the widespread use and notoriety of the NFP Logo Mark in its field, it is reasonable to infer to Paycom knew of the NFP Logo Mark and decided to adopt a confusingly similar mark anyway. Thus, any financial burden alleged by Paycom should be excluded from this Court's analysis.

Further, the injunction sought by NFP will not prevent Paycom from continuing to provide its products and services – it will merely prevent Paycom from unfairly using the Infringing Paycom Logo to do so. Because NFP has established that it is likely to prevail on the

18

merits of its claims, the "sliding scale" approach strongly weighs in favor of granting NFP preliminary injunctive relief.

### F. Issuance of a Preliminary Injunction is in the Public Interest

An injunction in this case is in the public interest because it will prevent consumer confusion. Consumers are currently under the false impression that Paycom's products and services emanate or originate from NFP, and/or that NFP has approved, sponsored or otherwise associated itself with Paycom. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469; *see also Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted) ("the trademark laws . . . are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit").

The public has the right not to be confused or defrauded as to the source of the services offered by Paycom, or as to the identity of the owner of trademarks used in connection with those services. Unless Paycom's continuing use of the Infringing Paycom Logo is immediately enjoined, the public will continue to be confused and misled by Paycom's conduct. Accordingly, granting NFP preliminary injunctive relief is in the public interest.

### G. The Court Should Require NFP to Post a Minimal Bond, if Any

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of the security bond is in the discretion of the Court. *Scherr v. Volpe,* 466 F.2d 1027, 1035 (7th Cir. 1972). The Seventh Circuit has determined that a strong likelihood of success is a major factor which could weigh heavily in favor of waiving a bond requirement. *Id.* Similarly, a minimal bond may be set

where the plaintiff is a "financially sound corporation" with "adequate financial resources." *See Turbo Tek Enterprises, Inc. v. F.P. Feature Products, Inc.*, No. 87 C 7438, 1987 WL 19558, at *18 (N.D. Ill. Oct. 7, 1987) (setting bond of $50,000 where "[t]here is no evidence to indicate that plaintiff Turbo Tek is not a financially sound corporation, or that it lacks adequate financial resources").

Here, NFP has demonstrated a strong likelihood of success on the merits, and that it is a financially sound corporation with adequate financial resources to pay for any damages caused by entry of an improper injunction. Accordingly, this Court should waive the bond requirement altogether, or, at most, set the bond at some minimal amount which it deems to be appropriate.

## IV.    CONCLUSION

Paycom's continuing use of the Infringing Paycom Logo is irreparably harming NFP's business, its brand, and its valuable goodwill in the NFP Logo Mark. Without entry of the requested preliminary injunctive relief, Paycom's activities will continue to lead prospective purchasers and others to believe that Paycom's services originate or emanate from or are somehow endorsed, sponsored, or approved by NFP, which they are not. Further, NFP has no adequate remedy at law for Paycom's infringement of the NFP Logo Mark.

For the foregoing reasons, NFP respectfully requests that this Court grant its Motion for Preliminary Injunction.

Respectfully submitted,

Dated:  October 15, 2014

/s Richard D. Harris_____
Richard D. Harris (ARDC No. 1137913)
Jeffrey P. Dunning (ARDC No. 6273364)
Matthew J. Levinstein (ARDC No. 6300343)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois  60601
(312) 456-8400

(312) 456-8435 (fax)

Attorneys for Plaintiff NATIONAL FINANCIAL
PARTNERS CORP.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on October 15, 2014. The undersigned attorney hereby certifies that Defendant's registered agent will also be served with a copy of this document at the following address:

Paycom Software, Inc.
c/o Illinois Corporation Service Company
801 Adlai Stevenson Dr.
Springfield, IL 62703.

*/s/ Richard D. Harris*